## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | |
|---|---|
| Chad Forrester, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Eye Care Leaders Holdings, LLC,<br><br>Defendant. | Case No.1:22-cv-00503<br><br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Chad Forrester ("Plaintiff" or "Mr. Forrester") brings this Class Action Complaint against Eye Care Leaders Holdings, LLC ("Defendant"), in his individual capacity and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions, his counsels' investigation, and upon information and belief as to all other matters, as follows:

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information including, but not limited to, name, address, date of birth and Social Security number (collectively, "personally identifiable information" or "PII") and diagnostic information and health insurance information ("protected health information" or "PHI").  Plaintiff hereby collectively refers to PII and PHI as "Private Information" or "PII and PHI."

2.      Defendant is the No. 1 source for top-rated ophthalmology-specific HER and Practice Management systems. Headquartered in Durham, N.C., Defendant has brought

1

together leading eye care companies including Integrity, iMEdicWare, Management Plus, MDOffice, Medflow, My Vision Express, KeyMedical, IO Practiceware, and EyeDoc, with the common goal of continuing to offer and grow the best eye-care solutions available in the market. Defendant serves over 9,000 eye care clinics across the country. [1]

3.      As part of its services, Defendant provides record-keeping services for 9,000 eye care clinics and millions of patients across the country.

4.      Defendant provides record-keeping services for Precision Eye Care Ltd. ("Precision")—a leader in eye care and surgery in Southeast Missouri.

5.      Plaintiff is a patient at Precision. As a patient, Plaintiff has disclosed his Private Information to Precision, and by proxy, to Defendant.

6.      Plaintiff provided his Private Information to Precision and Defendant in order to receive services rendered and on the reasonable expectation that Defendant would protect his Private Information.

7.      On or around December 4, 2021, an unauthorized third-party was able to gain access to Defendant's network (the "Data Breach"). The unauthorized third-party was able to access Defendant's data and deleted databases and system configuration files, including databases and system configuration files that contained Plaintiff's Private Information.

8.      As a result of the Data Breach. Defendant is a record-keeping vendor for eye clinics across the country and has negligently disclosed millions of Plaintiff's and Class Members' Private Information.

---

[1] https://eyecareleaders.com/about-eye-care-leaders/ (last visited: June 30, 2022).

9.     Despite the Data Breach taking place in 2021, Defendant hid the Breach from its customers for months. In fact, Defendant has *still not* notified breach victims that cybercriminals stole their information. As a result, Plaintiff and Class Members have not been properly informed that cybercriminals accessed and stole their Private Information.

10.     Indeed, Defendant's customers have only just started notifying patients about the Data Breach, meaning their information may have been exposed for up to a year without ECL warning them. The number of patients affected has swelled to over 2 million, putting the Breach "on pace to become the largest healthcare data breach in 2022."[2]

11.     As a result of the Data Breach, Plaintiff and millions of Class Members[3] suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.

12.     By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted Private Information impacted during the Data Breach included names, addresses, dates of birth, Social Security numbers,

---

[2] *See Another 1.3M patients added to data breach tally of ransomware attack on Eye Care Leaders*, SC Media, https://www.scmagazine.com/analysis/ransomware/another-1-3m-patients-added-to-data-breach-tally-of-ransomware-attack-on-eye-care-leaders (last accessed: June 17, 2022).
[3] https://www.hipaajournal.com/eye-care-leaders-hack-impacts-tens-of-thousands-of-patients/ (last accessed: June 20, 2022).

3

diagnostic information, and health insurance information.

13.     The exposed Private Information of Plaintiff and Class Members can—and likely will—be sold on the dark web.  Hackers can offer for sale the unencrypted, unredacted Private Information to criminals.  Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers – the gold standard for identity thieves.

14.     This Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiff and Class Members.  In addition to Defendant's failure to prevent the Data Breach, after discovering the breach, Defendant waited several months to report it to government agencies and affected individuals.

15.     As a result of this delayed response, Plaintiff and Class Members had no idea their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

16.     Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

4

17.     Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of Private Information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (iv) the continued and substantially increased risk to their Private Information which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

18.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the PII and PHI of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII and PHI of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

19.     Moreover, Defendant's negligence has affected millions of Class Members

5

all across the country. Indeed, as of June 30, 2022, the following of Defendant's customers have disclosed breaches affecting 2,287,098 patients:

- Texas Tech University Health Science Center: 1,290,104

- Regional Eye Associates, Inc. & Surgical Eye Center of Morgantown in West Virginia: 194,0245

- Spectrum Eye Physicians in California: 175,000

- Texas Eye Associates: 75,092

- Precision Eye Care in Missouri: 58,462

- Shoreline Eye Group in Connecticut: 57,047

- Summit Eye Associates in Tennessee: 53,818

- AU Health in Georgia: 48,587

- Finkelstein Eye Associates: 48,587

- Moyes Eye Center, PC in Missouri: 38,000

- McCoy Vision Center in Alabama: 33,930

- Chesapeake Eye Center in Maryland: 32,770

- Frank Eye Center in Kansas: 26,333

- Lori A. Harkins MD, P.C. d/b/a Harks Eye Clinic in Nebraska: 23,993

- Allied Eye Physicians & Surgeons in Ohio: 20,651

- EvergreenHealth in Washington: 20,533

- Sylvester Eye Care in Oklahoma: 19,377

- Cherry Creek Eye Physicians and Surgeons, P.C. in Colorado: 17,732

6

- Arkfield, Parson, and Goldstein, dba Illumin in Nebraska: 14,984

- Associated Ophthalmologists of Kansas City, P.C. in Missouri: 13,461

- Northern Eye Care Associates in Michigan: 8,000

- Sharper Vision in Kansas: 6,891

- Ad Astra Eye in Arkansas: 3,684

- Fishman Vision in California; 2,646

- Burman & Zuckerbrod Ophthalmology Associates, P.C., in Michigan; 1,337

- Kernersville Eye Surgeons in North Carolina: TBC

- Stokes Regional Eye Centers in North Carolina: TBC [4]

- Aloha Laser Vision: 43,263[5]

## PARTIES

20.     Plaintiff, Chad Forrester, is a natural person and citizen of Missouri, residing in Park Hills, Missouri, where he intends to remain. Mr. Forrester is a Data Breach victim and a current patient at Precision Eye Care, Ltd.—Defendant's customer. Mr. Forrester confirmed he was a Data Breach victim because he was notified via the Notice of Data Breach Letter, which indicated Defendant maintained Plaintiff's Private Information and failed to protect it in the Data breach.

21.     Defendant, Eye Care Leaders Holdings, LLC, is a North Carolina company with its principal place of business at 2222 Sedwick Rd. Durham, North Carolina.

---

[4] https://www.hipaajournal.com/eye-care-leaders-hack-impacts-tens-of-thousands-of-patients/ (last visited: June 30, 2022).
[5] Upon information and belief.

7

## JURISDICTION & VENUE

22.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiff, is a citizen of a state different from Defendant.

23.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

24.     Venue is proper under 18 U.S.C § 1391(b)(1) because ECL's principal place of business is in this District.

## FACTUAL ALLEGATIONS

### Background

25.     Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, including their PII and PHI which includes information that is static, does not change, and can be used to commit myriad financial crimes.

26.     Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand Defendant safeguard their Private Information.

27.     Defendant had a duty to adopt reasonable measures to protect the Private

8

Information of Plaintiff and Class Members from involuntary disclosure to third parties.

28. On information and belief, in the ordinary course of patient treatment, processing medical claims, sending bills, and their collection services, Defendant maintains the Private Information of patients and customers, including but not limited to: (1) name; (2) address; (3) date of birth; (4) Social Security number; (5) diagnostic information; and (6) health insurance information.

29. The unencrypted PII and PHI of Plaintiff and Class Members will likely end up for sale on the dark web as that is the *modus operandi* of hackers. In addition, unencrypted PII and PHI may fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiff and Class Members. In turn, unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members.

30. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information.

31. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[6]

---

[6] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed Aug. 23, 2021).

***Defendant Acquires, Collects, and Stores the Private Information of Plaintiff and Class Members***

32. Defendant acquired, collected, and stored the PII and PHI of Plaintiff and Class Members.

33. By obtaining, collecting, and storing the PII and PHI of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII and PHI from disclosure.

34. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Securing Private Information and Preventing Breaches***

35. Defendant could have prevented this Data Breach by properly securing and encrypting the systems containing the PII and PHI of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data, especially for individuals with whom it had not had a relationship for a period of time.

36. Defendant's negligence in safeguarding the PII and PHI of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

37. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII and PHI of Plaintiff and Class Members from being compromised.

10

38.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[7] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[8]

39.     The ramifications of Defendant's failure to keep secure the PII and PHI of Plaintiff and Class Members are long lasting and severe. Once PII and PHI is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

***Value of PII and PHI***

40.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[10] Criminals

---

[7] 17 C.F.R. § 248.201 (2013).
[8] *Id*.
[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:     https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/     (last accessed Oct. 27, 2021).
[10] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*:     https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/  (last accessed Oct. 27, 2021).

11

can also purchase access to entire company data breaches from $900 to $4,500.[11]

41.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[12]

42.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

43.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad

---

[11] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Oct. 27, 2021).
[12] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Oct. 27, 2021).

information is quickly inherited into the new Social Security number."[13]

44.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

45.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[14]

46.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

47.    The fraudulent activity resulting from the Data Breach may not come to light for years.

48.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your

---

[13] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed Oct. 27, 2021).
[14] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Aug. 23, 2021).

13

treatment, insurance and payment records, and credit report may be affected."

49.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

50.     According to account monitoring company LogDog, medical data, such as PHI, sells for $50 and up on the Dark Web.[15]

51.     Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

52.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if

---

[15] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last accessed July 20, 2021).

[16] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Aug. 23, 2021).

14

Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

53. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

54. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to potentially millions of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

55. To date, Defendant has offered Plaintiff and Class Members only 12 months of identity and credit monitoring services through Experian. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII and PHI at issue here. Moreover, Defendant put the burden squarely on Plaintiff and Class Members to enroll in the inadequate monitoring services.

56. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiff and Class Members.

57. As a condition of providing medical treatment and services, processing medical claims, sending bills, and providing collection services for treatment, YRMC requires that its customers entrust it with Private Information.

58. By obtaining, collecting, using, and deriving a benefit from Plaintiff and

15

Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff' and Class Members' Private Information from unauthorized disclosure.

59.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

60.     Plaintiff and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for business and health care purposes, and to prevent the unauthorized disclosures of the Private Information.

***Defendant failed to properly protect Plaintiff's and Class Members' Private Information***

61.     To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

16

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[17]

62. To prevent and detect cyber-attacks, including the cyber-attack that resulted

---

[17] *Id.* at 3-4.

in the Data Breach, Defendant could and should have implemented, as recommended by

the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[18]

---

[18] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last accessed Aug. 23, 2021).

63.     To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface]

19

for Office [Visual Basic for Applications].[19]

64. Given that Defendant was storing the PII and PHI of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

65. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the PII and PHI of Plaintiff and Class Members.

66. As the result of computer systems in need of security upgrades, inadequate procedures for handling email phishing attacks, viruses, malignant computer code, hacking attacks, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

67. Because Defendant failed to properly protect safeguard Plaintiff's and Class Members' Private Information, an unauthorized third party was able to access Defendant's network, and access Defendant's database and system configuration files.

68. Specifically, Defendant admits that on or around December 4, 2021, an unauthorized party accessed Defendant's network and deleted databases and system configuration files.

**Plaintiff Chad Forester's Experiences**

69. Plaintiff entrusted his Private Information to Defendant. Specifically,

---

[19] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last accessed Aug. 23, 2021).

Plaintiff is a current patient at Defendant's customer, Precision Eye Care Ltd. ("Precision.").

70.     As a condition of receiving Precision's products and services, Plaintiff disclosed his Private Information.

71.     Plaintiff provided his Private Information to Precision and trusted that the information would be safeguarded according to internal policies and state and federal law.

72.     At the time of the Data Breach, Defendant retained Plaintiff's name, address, Social Security number, diagnostic information, and health insurance information.

73.     On June 8, 2022, Precision notified Plaintiff that Defendant's network had been accessed and Plaintiff's Private Information may have been involved in the Data Breach.

74.     Plaintiff is very careful about sharing his sensitive PII and PHI. Plaintiff has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

75.     Plaintiff stores any documents containing his sensitive PII and PHI in a safe and secure location or destroys the documents. Moreover, Plaintiff diligently chooses unique usernames and passwords for his various online accounts.

76.     As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured. Moreover, this time was spent at Defendant's direction by way of the Data Breach notice

21

where Defendant advised Plaintiff to mitigate his damages by, among other things, monitoring his accounts for fraudulent activity.

77.     As a result of the Data Breach, Plaintiff was the victim of a credit card fraud scheme that resulted in an unauthorized and fraudulent charge of $155.30 on his credit card. Specifically, Plaintiff believes unauthorized third parties used the Private Information disclosed via Defendant's breach to obtain his credit card number and make fraudulent purchases.

78.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff' Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

79.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI being placed in the hands of unauthorized third parties and possibly criminals.

80.     Plaintiff has a continuing interest in ensuring that Plaintiff' PII and PHI, which, upon information and belief, remain backed up in Defendant's possession, is protected, and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

81.     Plaintiff brings this action on behalf of themselves and on behalf of all other persons similarly situated ("the Class") on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of

22

Civil Procedure.

82.     The Nationwide Class that Plaintiff seeks to represent is defined as follows:

All individuals residing in the United States whose Private Information was compromised in the Data Breach affecting Defendant, including all persons receiving notice about the Data Breach through Defendant's customers.

83.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

84.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

85.     Numerosity, Fed R. Civ. P. 23(a)(1): The Nationwide Class members are so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds, if not thousands, of individuals whose PII and PHI may have been improperly accessed in the Data Breach, and each Class is apparently identifiable within Defendant's records.

86.     Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.  Whether and to what extent Defendant had a duty to protect the PII and PHI of Plaintiff and Class Members;

b.  Whether Defendant had duties not to disclose the PII and PHI of Plaintiff and Class Members to unauthorized third parties;

23

c. Whether Defendant had duties not to use the PII and PHI of Plaintiff and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the PII and PHI of Plaintiff and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII and PHI had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiff and Class Members;

k. Whether Defendant violated the consumer protection statutes invoked herein;

l. Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

m. Whether Defendant knowingly made false representations as to it data security practices;

n. Whether Plaintiff and Class Members are entitled to restitution as a result of

24

Defendant's wrongful conduct; and

    o. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

87. <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiff' claims are typical of those of other Class Members because all had their PII and PHI compromised as a result of the Data Breach, due to Defendant's misfeasance.

88. <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

89. <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those

25

Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

90. <u>Policies Generally Applicable to the Class</u>, This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

91. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

92. The litigation of the claims brought herein is manageable. Defendant's

26

uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

93.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

94.     Unless a Class-wide injunction is issued, Defendant may continue in their failure to properly secure the PII and PHI of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

95.     Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

96.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.   Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b.   Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Privae

27

Information;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e. Whether Defendant breached the implied contract;

f. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

97. Plaintiff reserves the right to amend or modify the Class or Subclass definitions as this case progresses.

98. _Numerosity_. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of approximately 700,000 patients of YRMC whose sensitive data was compromised in Data Breach.

99. _Commonality_. There are questions of law and fact common to the Class,

28

which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff' and Class Members' Private Information;

    b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations including, *e.g.*, HIPAA;

    d.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

    e.    Whether Defendant owed a duty to Class Members to safeguard their Private Information;

    f.    Whether Defendant breached its duty to Class Members to safeguard their Private Information;

    g.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

    h.    Whether Defendant should have discovered the Data Breach sooner;

    i.    Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

    j.    Whether Defendant's conduct was negligent;

29

k.   Whether Defendant breach implied contracts with Plaintiff and Class Members;

l.   Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

m.   Whether Defendant failed to provide notice of the Data Breach in a timely manner, and;

n.   Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

100.   <u>Typicality</u>. Plaintiff' claims are typical of those of other Class Members because Plaintiff' information, like that of every other Class Member, was compromised in the Data Breach.

101.   <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff' Counsel are competent and experienced in litigating class actions.

102.   <u>Predominance</u>. Defendant have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff' and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

103.   <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law

30

and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

104.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

### COUNT I
### Negligence
### (On Behalf of Plaintiff and the Putative Rule 23 Class)

105.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

106.    Defendant required customers, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of rendering medical treatment and services, billing, and collection services.

107.    By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the

31

information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

108.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

109.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

110.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

111.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential

32

data.

112.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

113.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.  Failing to adequately monitor the security of its networks and systems;

    c.  Failing to ensure that its email system had plans in place to maintain reasonable data security safeguards;

    d.  Failing to have in place mitigation policies and procedures;

    e.  Allowing unauthorized access to Class Members' Private Information;

    f.  Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

    g.  Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

114.     It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high

33

frequency of cyberattacks and data breaches in the healthcare industry.

115.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

116.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

117.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

118.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII and/or PHI is used; (iii) the compromise, publication, and/or theft of their PII and/or PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and/or PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and/or PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate

34

measures to protect the PII and/or PHI of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PII and/or PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

119.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

120.   Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII and/or PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and/or PHI in its continued possession.

121.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages

**COUNT II**
**Negligence Per Se**
**(On Behalf of Plaintiff and the Putative Rule 23 Class)**

122.   Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

123.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant's, of failing to use reasonable measures to protect Private

35

Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

124. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored, and the foreseeable consequences of the Data Breach for companies of Defendant's magnitude, including, specifically, the immense damages that would result to Plaintiff and Members of the Class due to the valuable nature of the Private Information at issue in this case—including Social Security numbers.

125. Defendant's violations of Section 5 of the FTC Act constitute negligence *per se*.

126. Plaintiff and members of the Class are within the class of persons that the FTC Act was intended to protect.

127. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of failures to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

128. As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated

36

with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of its current and former employees and customers in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and members of the Class.

129.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and members of the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

130.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

37

131.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages

132.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII and PHI.

133.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, patients' PII and PHI. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's sensitive PII and PHI.

134.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result in the event of a breach, which ultimately came to pass.

135.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

38

136.    Defendant had a duty to Plaintiff and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff and the Class's PII and PHI.

137.    Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII and PHI.

138.    Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

139.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

140.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII and PHI.

141.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII and PHI; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm

39

resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

<u>**COUNT III**</u>
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Putative Rule 23 Class)**

142.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

143.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

144.    Defendant owed a duty to Plaintiff and Class Member to keep their Private Information confidential.

145.    The unauthorized disclosure and/or acquisition (*i.e.,* theft) by a third party of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

146.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' Private Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

147.    Defendant's failure to protect Plaintiff's and Class Members' Private Information acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

40

148. Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

149. Because Defendant failed to properly safeguard Plaintiff's and Class Members' Private Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

150. As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

151. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

152. Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

153. Plaintiff, on behalf of himself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Private Information.

154. Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for

41

identity theft and fraud, plus prejudgment interest, and costs.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Putative Rule 23 Class)**

155.    Plaintiff repeats and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

156.    This cause of action is brought in the alternative to Plaintiff' breach of implied contract claim.

157.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII and PHI.

158.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff' and Class Members' Private Information.

159.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

160.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

161.    Defendant acquired the monetary benefit and PII and PHI through

42

inequitable means in that they failed to disclose the inadequate security practices previously alleged.

162.    If Plaintiff and Class Members knew that Defendant had not secured their PII and PHI, they would not have agreed to provide their PII and PHI to Defendant.

163.    Plaintiff and Class Members have no adequate remedy at law.

164.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Priv is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII and PHI in their continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

165.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

43

166.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.     For an Order certifying the Nationwide Class and appointing Plaintiff and his Counsel to represent each such Class;

B.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.     For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.     prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.     requiring Defendant to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.  requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiff and Class Members;

v.  prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi.  requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures;

ix.  requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network

45

is compromised, hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and securing checks;

xi. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and

46

external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

DATE: July 1, 2022                    Respectfully submitted,

/s/ Scott C. Harris
Scott C. Harris
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5003
Fax: (919) 600-5035
*sharris@milberg.com*


Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290
*gklinger@milberg.com*


Bryan L. Bleichner*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
*bbleichner@chestnutcambronne.com*

*\* Pro hac vice forthcoming*

***Counsel for Plaintiff and the Class***

48